OPINION
{¶ 1} Appellant, Antoine Sullivan, appeals the decision of the Butler County Common Pleas Court, Juvenile Division, granting permanent custody of his daughter, Aaliyah Sullivan ("Aaliyah"), to appellee, the Butler County Children Services Board ("BCCSB"). We affirm the juvenile court's decision.
 {¶ 2} Appellant and Tina Sackenheim are the parents of Aaliyah, born January 25, 1997. Appellant and Ms. Sackenheim were never married, but resided together for a period of time prior to and after Aaliyah's birth. The couple separated in June 1998. Aaliyah lived with her mother until August 1998, when her mother voluntarily gave custody to appellant.
 {¶ 3} Ms. Sackenheim has two older children, Michael and Chelsea, by another father. Michael and Chelsea were removed from her home in September 1998. In November 1998, after Michael and Chelsea reported to their therapist that appellant had sexually abused them, Aaliyah was removed from appellant's home. BCCSB took temporary custody of all three children and placed them in foster care. BCCSB subsequently developed case plans for appellant and Ms. Sackenheim designed to reunify them with their children.
 {¶ 4} In November 1998, BCCSB filed a complaint in the juvenile court alleging that Michael, Chelsea, and Aaliyah were dependent children, and that Michael and Chelsea were abused and neglected children. After a hearing, the juvenile court found that all three children were dependent children, that Michael and Chelsea were neglected children, and that Chelsea was an abused child. The court found that Chelsea was sexually abused while in the care of appellant and Ms. Sackenheim. The court did not name a perpetrator, but stated that appellant and Ms. Sackenheim were equally responsible for the abuse.
 {¶ 5} In February 2000, BCCSB filed a motion for permanent custody of Aaliyah, Michael, and Chelsea. The juvenile court held a hearing on BCCSB's motion, which concluded in November 2000. Prior to the filing of the parties' closing arguments, BCCSB filed a "Motion to Reopen Permanent Custody Proceedings" based on the discovery of new evidence. BCCSB submitted an affidavit signed by a BCCSB caseworker describing the new evidence. In the affidavit, the caseworker claimed that appellant had another child, a son, a fact that appellant had concealed from the court. The affidavit stated that, according to Hamilton County Department of Human Services records, appellant's son had previously made sexual abuse allegations against appellant and appellant's brother. Further, the affidavit stated that appellant's son had perpetrated sexual abuse and that he had recently been released to appellant's care. The juvenile court granted BCCSB's motion, extending the hearing and allowing BCCSB to present additional testimony. The hearing concluded in September 2001.
 {¶ 6} In February 2002, the juvenile court granted permanent custody of all three children to BCCSB. Appellant appealed the juvenile court's decision as to Aaliyah, presenting three assignments of error.
Assignment of Error No. 1
 {¶ 7} "The trial court erred to the prejudice of the appellant father Antoine Sullivan when it allowed the appellee to reopen the permanent custody proceedings on the basis of newly discovered evidence."
 {¶ 8} In this assignment of error, appellant argues that the juvenile court abused its discretion by "re-opening the permanent custody proceedings" and allowing BCCSB to introduce newly discovered evidence. According to appellant, "[t]o allow the Appellee, after a period of two years that it had to gather evidence and prepare its case, to bring forth what was called newly discovered evidence that for the most part was ancient history and was at best irrelevant to the present case, is an abuse of discretion."
 {¶ 9} Neither party has provided us with relevant case law addressing this issue. Appellant argues that the juvenile court's re-opening of the permanent custody proceedings is akin to granting a new trial based on newly discovered evidence. Therefore, appellant argues that we should apply the standard set forth in Sheen v. Kubiac (1936),131 Ohio St. 52, and determine that the juvenile court erred in granting BCCSB's motion. Under Sheen, a court can grant a new trial only if (1) the new evidence will probably change the result of the trial; (2) the new evidence has been discovered since the trial; (3) the new evidence could not have been discovered by due diligence prior to the trial; (4) the new evidence is material; (5) the new evidence is not merely cumulative to former evidence; and (6) the new evidence does not merely impeach or contradict the former evidence. Id.
 {¶ 10} We do not find that BCCSB's motion was akin to a motion for a new trial. BCCSB was not asking the court for a new hearing but for the opportunity to present additional, newly discovered evidence within the same hearing.
 {¶ 11} Appellant does not direct us to any relevant law indicating that the juvenile court's actions were improper and we find nothing improper in the juvenile court's granting of BCCSB's motion. Contrary to appellant's assertion, we do not find that the new evidence was "at best irrelevant." While some of the evidence referred to in the affidavit does not appear to be relevant, such as the portions relating to the deceased mother of appellant's son, most of the evidence referred to was relevant. Appellant's brother resided in the apartment below appellant and likely would have had contact with Aaliyah if appellant was granted custody. Any information regarding possible sexual abuse perpetrated by appellant's brother would be relevant and material to the juvenile court's best interest determination.
 {¶ 12} Similarly, information regarding possible sexual abuse perpetrated by appellant's son was relevant because the possibility existed that appellant's son would be residing with him. Appellant's son had in fact been released to his care at the time. Further, for obvious reasons, any information regarding sexual abuse perpetrated by appellant himself was relevant, especially in light of the sexual abuse allegations made by Ms. Sackenheim's children. The evidence referred to in the affidavit also was relevant to appellant's credibility, likely affecting the juvenile court's view of appellant's previous testimony.
 {¶ 13} We also find no indication that BCCSB should have discovered this "new evidence" prior to the filing of its motion. Appellant had concealed this information from BCCSB, specifically stating that he had no other children. As BCCSB states in his brief, it had no reason not to believe appellant. Requiring BCCSB to investigate the veracity of all its clients' claims would be overly burdensome. We note that appellant also successfully concealed this fact from Hamilton County Job and Family Services, the agency working with appellant on his son's case.
 {¶ 14} We find that the juvenile court's actions were proper under the circumstances. The new evidence referred to in the affidavit was relevant and material to the juvenile court's best interest determination. Extending the hearing was consistent with the purpose of the juvenile code "to provide for the care, protection, and mental and physical development of children." See R.C. 2151.01. Extending the hearing was necessary to fulfill this purpose. Accordingly, we do not find that the juvenile court abused its discretion by extending the hearing so that BCCSB could present additional testimony regarding the new evidence. Appellant's first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 15} "The trial court erred to the prejudice of the appellant when it found that Aaliyah could not and should not be placed with her father, appellant Antoine Sullivan, within a reasonable period of time and terminated his parental rights."
Assignment of Error No. 3
 {¶ 16} "The trial court erred to the prejudice of the appellant when it found that it was in the best interest of Aaliyah to terminate appellant's parental rights and grant custody to appellee."
 {¶ 17} Because appellant's final two assignments of error are interrelated, we will address them together. In these assignments of error, appellant argues that the juvenile court's decision to grant permanent custody of Aaliyah to BCCSB was contrary to law.
 {¶ 18} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe that fundamental liberty interest, but to end it. Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769,102 S.Ct. at 1403. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 19} Before granting permanent custody of children to the state, the trial court is required to make specific statutory findings. The reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. In re William S., 75 Ohio St.3d 95,1996-Ohio-182.
 {¶ 20} When a state agency moves for permanent custody, the trial court is first required to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 21} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 22} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 23} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 24} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 25} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 26} The juvenile court found by clear and convincing evidence that it was in Aaliyah's best interest for the court to grant permanent custody to BCCSB. The juvenile court analyzed each of the best interest factors listed in R.C. 2151.414(D)(1)-(4). Under the first factor, the juvenile court noted that appellant's visits went relatively well and that he was faithful in visiting Aaliyah. The court also noted that Aaliyah had bonded well with her foster family and was thriving, and that the foster family was interested in adopting Aaliyah. Under the second factor, the court noted that the guardian ad litem recommended permanent custody to BCCSB. Under the third factor, the court noted that Aaliyah had been in the temporary custody of BCCSB for more than 12 months in a consecutive 22-month period.
 {¶ 27} Under the fourth factor, the court discussed whether legally secure placement could be achieved with appellant. While the court found that appellant unquestionably loves his daughter, the court found that serious questions remained regarding appellant's "honesty, his ability to control his anger, his ability to parent Aaliyah independently, his current status regarding the use or possession of illegal drugs, and as to whether or not Aaliyah would be safe in [appellant's] care." The court did not believe that any of its concerns could be alleviated within a reasonable amount of time. The court specifically mentioned its earlier finding that appellant was "responsible" for the sexual abuse of Chelsea and appellant's "deliberate lying" about his prior drug use and the existence of his son.
 {¶ 28} Based upon its analysis of the factors in R.C. 2151.414(D), the juvenile court found by clear and convincing evidence that it was in Aaliyah's best interest to grant permanent custody to BCCSB. The court then noted that because Aaliyah had been in the custody of BCCSB for 12 or more months in a consecutive 22-month period, it could grant permanent custody of Aaliyah to BCCSB. See R.C. 2151.414(B)(1)(d). The court continued its analysis and found that it was required to grant permanent custody to BCCSB because it determined that Aaliyah could not and should not be placed with any parent within a reasonable period of time. See R.C. 2151.414(B)(2). As required by statute, the court analyzed the factors in R.C. 2151.414(E) in making this determination.
 {¶ 29} We find that the juvenile court properly followed the statutory factors in determining that it was in Aaliyah's best interest to grant custody to BCCSB. Additionally, based on the following discussion, we find that its determination is supported by the record.
 {¶ 30} Numerous witnesses testified that appellant had great difficulty controlling his anger. Dr. Charles Lee, a psychologist at Children's Diagnostic Center, testified that appellant had temper control problems and that he needed anger management counseling. Dr. Lee testified that appellant's inability to control his anger would likely affect his parenting skills. Dr. William Walters, also a psychologist at Children's Diagnostic Center, similarly noted appellant's difficulty in dealing with his anger.
 {¶ 31} Several BCCSB caseworkers testified about appellant's difficulty dealing with his anger. Katie Conner and Kelly Walsh both testified about aggressive outbursts directed towards them by appellant. Conner had been at appellant's residence investigating possible sexual abuse against a 15-year-old girl living in the home. Walsh had been at appellant's home when Aaliyah was removed. According to Walsh's testimony, appellant had verbally threatened her, stating: "I hope that any child you have dies in your belly." Walsh was pregnant at the time. Ellie Meisenbach, another BCCSB caseworker, testified that appellant's angry outbursts were a consistent problem.
 {¶ 32} Karen Lavender, an instructor in the Development of Living Skills Program, testified that appellant had anger management issues that had not been resolved. While she testified that appellant did not display any anger towards Aaliyah, Lavender had concerns that Aaliyah might imitate his behavior. Ms. Lavender also testified about appellant's parenting skills. She testified that appellant had the ability to parent, but did not exercise it. She testified that appellant had difficulty "actively playing" with Aaliyah and was not consistent in his parenting.
 {¶ 33} Serious concerns also remained regarding appellant's drug use. Appellant told Dr. Lee that he had not used marijuana in the last three or four months. However, he had previously told Greg Corbin of Horizon Services that he had not used marijuana in the last 15 years. Appellant acknowledged this inconsistency and testified that he was responding to Mr. Corbin's question in relation to "hard drugs."
 {¶ 34} Jim Sarris, a therapist at Catholic Social Services, testified that it would not be safe or healthy for Aaliyah to be in the custody of appellant. While acknowledging that appellant loves Aaliyah, Sarris' concerns stemmed from appellant's criminal history, his history of drug abuse, and the sexual abuse allegations made against him by Ms. Sackenheim's children.
 {¶ 35} In his report, the guardian ad litem recommended permanent custody to BCCSB. The guardian specifically mentioned appellant's anger control problems and his inconsistent reporting regarding drug use as reasons for his recommendation. The guardian noted appellant's denial that these problems existed as critical to his recommendation. The guardian also mentioned concerns regarding appellant's honesty and that Chelsea had been sexually abused while in his care.
 {¶ 36} Based on the above evidence in the record, we do not find that the juvenile court erred in determining that it was in Aaliyah's best interest for BCCSB to take permanent custody. Serious concerns remained regarding anger control, drug use, sexual abuse, honesty, and appellant's ability to independently parent. The juvenile court's best interest finding is supported by the record. Accordingly, appellant's third assignment of error is overruled.
 {¶ 37} Because the juvenile court found by clear and convincing evidence that it was in Aaliyah's best interest for BCCSB to take permanent custody, and Aaliyah had been in the temporary custody of BCCSB for well over 12 months in a consecutive 22-month period, the juvenile court had the power to grant permanent custody to BCCSB. See R.C.2151.414(B)(1). We find no error in the juvenile court's discretionary grant of permanent custody to BCCSB. Therefore, we need not reach appellant's second assignment of error regarding the mandatory factors in R.C. 2151.414(E).
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.